J. J. Newberry Company, Respondent, *v.* Globe and Rutgers Fire Insurance Company, Appellant.

(Argued June 15, 1931; decided July 15, 1931.)

*Robert Kelly Prentice* and *Myron T. Townsend* for appellant. Payment by defendant to plaintiff's brokers of the unearned premium was authorized as matter of law by plaintiff's letter. (*Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310; *Straus* v. *Ernstein*, 232 N. Y. 187; *Morriss* v. *Home Ins. Co.*, 78 Misc. Rep. 303; *Hoffman* v. *Froma Realty Co.*, 153 App. Div. 770; *Doubleday* v. *Kress*, 50 N. Y. 410.) Since the brokers had by the letter and possession of the policy authority to collect the premium, the defendant might have paid to them the return premium in cash, and the brokers might have immediately repaid to the defendant the commission on the provisional premium. After the payment of the money the defendant was not responsible for its application. (*Cohen* v. *O'Connor*, 5 Daly, 28; *Abrahamson* v. *The Canonicus*, 65 Fed. Rep. 525; *Potter* v. *Sager*, 184 App. Div. 327; 228 N. Y. 526.)

*Edmond B. Butler* and *Claude V. Pallister* for respondent. There is no question of law for the court to decide

affecting plaintiff's letter. (*Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 210; *McKenna* v. *Firemen's Ins. Co.*, 30 Misc. Rep. 727; *Hoffman* v. *Froma Realty Co.*, 153 App. Div. 770; *Smith* v. *Kidd*, 68 N. Y. 130.)

KELLOGG, J. The defendant, in January, 1927, issued and delivered to the plaintiff a policy of fire insurance, insuring the plaintiff, for a term of one year, against loss or damage by fire, occurring in respect to merchandise situate in its various stores throughout the United States. An advance premium of $37,500 was paid the defendant by the plaintiff, or by brokers on its behalf. The policy provides that it " shall be cancelled at any time at the request of the insured, in which case the company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time." On April 25th the plaintiff wrote the defendant directing a cancellation of the policy as of that date, and requesting that a check for the unearned premium be sent directly to it. The excess premium paid, over and above the customary short rate to the date of cancellation, was $9,979.06. Figured on a *pro rata* basis, the returnable excess would have equalled more than twice that sum. The plaintiff did not return the insurance policy to the defendant when it sent the notice of cancellation. On August 27th, 1927, the defendant wrote the plaintiff requesting that the policy be returned. Instead of complying with the request, the plaintiff, on September 9th, 1927, delivered the policy to Curtis, Hellriegel & Pereyra, Inc., its insurance brokers who had procured the policy to be written. The delivery was accompanied by a letter reading as follows: " We are enclosing herewith Globe & Rutgers policy #6396 to be returned to the home office of the company in order to obtain premium due us for the unexpired term of this policy. It is our understanding when this insurance was effected that in the event of us

being in a position to obtain a better coverage at more advantageous rates you felt that there would be a possibility of having this contract cancelled on a *pro rata* basis. We trust that you will be in a position to carry out the original thoughts." Armed with this letter and the policy itself, Mr. Pereyra of the brokerage firm attended at the offices of the defendant. On delivery of the policy the defendant handed to Mr. Pereyra a check, payable to his firm, for $8,981.15. The firm deposited the check to its credit in its bank of deposit. It thereupon delivered to the plaintiff its check for $1,481.15. The discrepancy of $7,500 between these two checks represents an amount which the brokers claim was owing them by the plaintiff. The following indorsement appears on the back of the check:

"G & R 6396  R.P..... .............. $8,981.15
Balance due on O.P................. 7,500.00
-------
$1,481.15 "

The plaintiff retained the check but has never cashed it. Subsequently, the plaintiff brought this action to recover from the defendant, the insurer, the sum of $9,979.06, the agreed amount of the excess premium. The defendant pleaded payment, and now asserts that, as a matter of law, in making payment to the broker, it had fully satisfied its debt to the plaintiff.

We entertain no doubt that, to the extent that the defendant paid the brokers, it satisfied the claim of the plaintiff. The letter of the plaintiff, written on September 9, 1927, and delivered to the brokers, is clear and explicit. The plaintiff writes that it incloses the policy " in order to obtain return premium due us for the unexpired term of this policy." It reminds the brokers that when the insurance was effected they had thought " that there would be a possibility of having this con-

tract cancelled on a *pro rata basis*." It concludes "We trust that you will be in a position to carry out the original thoughts." Here are definite instructions given by an assured to a broker to negotiate for a *pro rata* rather than a short term settlement, if such might be obtained, accompanied by a delivery of the policy, in order that the broker might make delivery to the insurer and "obtain return premium due us." Under the express terms of the policy the only returnable premium was that which might be calculated on the short term basis. On this basis a settlement between the insurer and the broker was reached. To the extent of the payment made it was clearly an authorized payment to the plaintiff's broker. The suggestion that the letter had no force as an authorization of the payment for the reason that it contradicted the plaintiff's letter of April 25, 1927, by which the defendant was ordered to make payment directly to plaintiff, is without sense. That the plaintiff was not bound by its unexecuted instructions previously given; that it might change its mind and reinstruct to the contrary; these are self-evident truths. That it did so reinstruct, for reasons of self-interest, is equally clear. Acting upon its own initiative the limit of its recovery would be $9,979.06; acting through its broker, who might procure a settlement on a *pro rata*, rather than a short term basis, it might recover $20,987.44. Although the brokers, if they made the collections, might deduct therefrom the sum of $7,500, in satisfaction of their claim against the plaintiff, before making remittance, even then the plaintiff would be better off than if it made a direct collection, thereby avoiding payment to its broker. No doubt these thoughts caused the plaintiff to alter its instructions; but whether they did or not, there can be no doubt that the plaintiff gave new directions that the defendant make payment to the brokers.

The defendant gave its check to the brokers for $8.981.15 rather than for $9,979.06, the amount con-

cededly due for the excess premium. In so doing it credited itself with the sum of $997.91, commissions at ten per cent on $9,979.06, which it had previously paid to the brokers for procuring the risk. Concededly, the plaintiff was not obligated to reimburse the brokers for the amount of the unearned commissions which they were required to refund to the defendant. It is said, however, that the brokers would have been entitled to deduct from the premium collection when made the sum of $7,500, owed to them by the plaintiff; that, therefore, they were entitled, in lieu of receiving payment of $997.91, to credit the defendant with that part of the return premiums to which they were entitled. The argument is subtle but unsound. Certainly the defendant, in satisfying its own claim against the brokers, did not make a payment to the principal of the brokers, the plaintiff, of an equal amount, and yet payment is here the only defense made. The plaintiff is, therefore, entitled to a recovery of $997.91, the balance of the return premium which the defendant has failed to pay.

The judgment of the Appellate Division and that of the Trial Term should be modified by reducing the plaintiff's recovery to the sum of $997.91, with interest from September 14, 1927, and as modified affirmed, without costs in the Appellate Division or in this court.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.